917 So.2d 424 (2005)
Sam P. CICHIRILLO
v.
AVONDALE INDUSTRIES, INC., Hopeman Brothers, Inc., Individually as Alleged Successor in Interest to its Former Wholly-Owned Subsidiary, Wayne Manufacturing Company, Inc., Uniroyal, Inc., Charles Johnson, Eagle, Inc., Reilly-Benton Company, Inc., et al.
Nos. 04-C-2894, 04-C-2918.
Supreme Court of Louisiana.
November 29, 2005.
Blue Williams, LLP, Edwin A. Ellinghausen, III, Brian Carl Bossier, Robert *425 Edgar Caraway, III, Erin Helen Boyd, Mandeville, for Applicant in No. 2004-C-2918
Abbott, Simses & Kuchler, APLC, Houston, Johanna Gabrielle King; Lee, Futrell & Perles, LLP, Richard Marshall Perles, Gary Allen Lee, New Orleans; Jones, Walker, Waechter, Poitevent, Carrere & Denegre, William Lee Schuette, Jr., Leon Gary, Jr., Baton Rouge; Galloway, Johnson, Tompkins, Burr & Smith, APLC, John Emerson Galloway, Larry Gene Canada, New Orleans; Hailey, McNamara, Hall, Larmann & Papale, LLP, Dominic J. Ovella, Christopher Kelly Lightfoot, Claude Alvin Greco, Valerie T. Schexnayder, Metairie; Murray Law Firm, Stephen Barnett Murray, Julie Ann Ardoin, New Orleans; Bernard Cassisa, Elliott & Davis, Stephen Nolan Elliott, Metairie; Christovich & Kearney, Joseph Warren Gardner, Jr., New Orleans; Crawford Lewis, PLLC, Samuel Milton Rosamond, III, Baton Rouge; Montgomery, Barnett, Brown, Read, Hammond & Mintz, Lawrence Goode Pugh, III, New Orleans; Duncan, Courington & Rydberg, LLC, Blaine Augusta Moore, Kaye N. Courington, New Orleans; Stone Pigman Walther Wittmann, LLC, Mary L. Dumestre, New Orleans; Lugenbuhl, Wheaton, Peck, Rankin & Hubbard, Gordon Peter Wilson, New Orleans; Forman Perry Watkins Krutz & Tardy, LLP, Forrest Ren Wilkes, New Orleans; Abbott, Simses & Kuchler, APLC, Michael Henry Abraham; Plauche, Maselli, Landry & Parkerson, LLP, Wendy Kristine Lappenga, New Orleans; Deutsch, Kerrigan & Stiles, LLP, Lori P. Moser, Erin Helen Boyd, Claude Alvin Greco, Stephen Nolan Elliott, Kaye N. Courington, Lori P. Moser, Blaine Augusta Moore, Erin Helen Boyd, Lezly Lyn Petrovich, Holly Elizabeth Ramsey, for respondent in No. 2004-C-2918.
Abbott, Simses & Kuchler, APLC, Houston, Johanna Gabrielle King; Lee, Futrell & Perles, LLP, Richard Marshall Perles, Gary Allen Lee, New Orleans, for Applicant in No. 2004-C-2894.
Blue Williams, LLP, Edwin A. Ellinghausen, III, Brian Carl Bossier, Robert Edgar Caraway, III, Erin Helen Boyd, Mandeville; Jones, Walker, Waechter, Poitevent, Carrere & Denegre, William Lee Schuette, Jr., Leon Gary, Jr., Baton Rouge; Galloway, Johnson, Tompkins, Burr & Smith, APLC, John Emerson Galloway, Larry Gene Canada, New Orleans; Hailey, McNamara, Hall, Larmann & Papale, LLP, Dominic J. Ovella, Christopher Kelly Lightfoot, Claude Alvin Greco, Valerie T. Schexnayder, Metairie; Murray Law Firm, Stephen Barnett Murray, Julie Ann Ardoin, New Orleans; Bernard Cassisa, Elliott & Davis, Stephen Nolan Elliott, Metairie; Christovich & Kearney, Joseph Warren Gardner, Jr., New Orleans; Crawford Lewis, PLLC, Samuel Milton Rosamond, III, Baton Rouge; Montgomery, Barnett, Brown, Read, Hammond & Mintz, Lawrence Goode Pugh, III, New Orleans; Duncan, Courington & Rydberg, LLC, Blaine Augusta Moore, Kaye N. Courington, New Orleans; Stone Pigman Walther Wittmann, LLC, Mary L. Dumestre, New Orleans; Lugenbuhl, Wheaton, Peck, Rankin & Hubbard, Gordon Peter Wilson, New Orleans; Forman Perry Watkins Krutz & Tardy, LLP, Forrest Ren Wilkes, New Orleans; Abbott, Simses & Kuchler, APLC, Michael Henry Abraham; Plauche, Maselli, Landry & Parkerson, LLP, Wendy Kristine Lappenga, New Orleans; Deutsch, Kerrigan & Stiles, LLP, Lori P. Moser, Erin Helen Boyd, Claude Alvin Greco, Stephen Nolan Elliott, Kaye N. Courington, Lori P. Moser, Blaine Augusta Moore, Erin Helen Boyd, Lezly Lyn Petrovich, Holly Elizabeth Ramsey, for respondent in No. 2004-C-2894.
*426 WEIMER, Justice.
The sole issue in this case is whether decedent's suit for damages for asbestosis, filed in a Mississippi court seven years prior to decedent's diagnosis of mesothelioma, interrupted prescription from running in this suit filed more than three years after his diagnosis of mesothelioma. Finding as a matter of law that interruption of prescription did not occur, we reverse the appellate court's judgment and reinstate the judgment of the trial court granting an exception of prescription in favor of defendants, Peter Territo and Avondale Industries, Inc.,[1] as to the action for damages filed by Sam P. Cichirillo.[2]

FACTS AND PROCEDURAL HISTORY
Sam P. Cichirillo enlisted in the United States Navy in December of 1941 and served until August 1961, during which time he worked at Ingalls Shipyard in Pascagoula, Mississippi. After retiring from the Navy, he accepted a job at Avondale Shipyard where he remained employed until 1984. In April 1991, Cichirillo was diagnosed with asbestosis. In March 1992, numerous plaintiffs (including plaintiff herein) filed suit against numerous defendants in state court in Mississippi for damages sustained as a result of occupational exposure to asbestos fibers at Ingalls Shipyard and other locations in the southeastern United States.
In May of 1999, Cichirillo was diagnosed with mesothelioma.[3] In December of 2002, he filed suit in Louisiana naming a number of defendants, including Avondale Industries, Inc. and Peter Territo, an executive officer of Avondale Industries, Inc., (hereafter "Avondale defendants") alleging he contracted mesothelioma as a result of his exposure to asbestos during military service and while employed as an electrician by Avondale Industries, Inc. from 1961 to 1984. The petition alleges the defendants contributed to plaintiff's exposure "to asbestos and asbestos containing products designed, manufactured, fabricated, assembled, installed, supplied, sold, marketed, distributed, warranted, and/or advertised by the defendants named herein."
Territo filed a motion to strike and exceptions of lis pendens and no cause of action for post-October 1976 exposure. Judgment rendered on March 10, 2003, on those issues is not before this court. Territo also filed an exception of prescription on June 18, 2003, asserting that plaintiff knew as early as May 1999 that he suffered from mesothelioma and that suit was filed more than one year following that knowledge. Several other defendants filed exceptions of prescription or joined in the exception filed by Territo.
Defendants' exceptions of prescription were scheduled for hearing on September 5, 2003. The trial court granted judgment in favor of Territo. In light of the court's ruling granting the exception of prescription *427 filed by Territo, the court indicated there was no reason to hear the remaining exceptions and granted judgment in favor of the other defendants, dismissing plaintiff's suit. Plaintiff appealed.
Finding prescription had been interrupted by timely filing a cause of action in Mississippi, in a court of both competent jurisdiction and venue, the court of appeal reversed and remanded the matter for further proceedings. Cichirillo v. Avondale Industries, Inc., 04-0131 (La.App. 4 Cir. 10/27/04), 888 So.2d 947. The court relied on LSA-C.C. arts. 3462[4] and 1799,[5] and the case of Taylor v. Liberty Mutual Insurance Company, 579 So.2d 443 (La. 1991),[6] to find that prescription was interrupted by the timely filing of suit in Mississippi.
Defendants, Peter Territo and Avondale Industries, Inc., applied for writ of certiorari. Writs were granted in order to determine the correctness of the court of appeal opinion. Cichirillo v. Avondale Industries, Inc., 04-2894, 04-2918 (La.3/11/05), 896 So.2d 47, 48.

DISCUSSION
On appeal of the trial court's ruling, plaintiff raised two assignments of error claiming the trial court erred in holding the prescriptive period in Louisiana had run. Plaintiff argued: (1) the ongoing complaint in Mississippi operated to interrupt the prescriptive period in Louisiana, and (2) timely filing of suit in a court of proper jurisdiction and venue against defendants who are joint and solidary obligors with the current defendants served to interrupt prescription.
The court of appeal agreed, finding plaintiff timely filed a cause of action in Mississippi in a court of competent jurisdiction and venue in which he reserved his right to bring an action for damages as a result of asbestos-related injuries, including mesothelioma. The court found the Mississippi lawsuit, still pending at the time suit was filed in Louisiana, served to interrupt prescription against the defendants in the current suit.
Upon our review of the record in the instant case, it was determined the parties failed to formally admit any evidence in favor of or in opposition to the exception of prescription. Various documents contained in the record were relied upon by the lower courts although not admitted into evidence. As a consequence, *428 this court ordered the parties to show cause, by brief, whether this court's concern about a lack of any evidentiary record was correct.[7]
In response, both plaintiff and defendants acknowledge in briefs the failure to formally introduce evidence at the hearing on the trial court level. Although the record contains no formal stipulation, both parties suggest the matter is ripe for resolution and agree there are no factual disputes as to the date Cichirillo learned he had contracted mesothelioma.
A party urging an exception of prescription has the burden of proving facts to support the exception unless the petition is prescribed on its face. Winford v. Conerly Corporation, 04-1278, p. 8 (La.3/11/05), 897 So.2d 560, 565. Although evidence may be introduced to support or controvert any objection pleaded, in the absence of evidence, an objection of prescription must be decided upon facts alleged in the petition with all allegations accepted as true. LSA-C.C.P. art. 931; Mitchell v. Terrebonne Parish School Board, 02-1021 (La.App. 1 Cir. 4/2/03), 843 So.2d 531, 533, writ denied, 03-2275 (La.11/26/03), 860 So.2d 1135.
In this case, we note plaintiff's petition alleged: "Plaintiff recently discovered that he has mesothelioma which was caused by his exposure to asbestos." Because the date of discovery was not included in the petition, the burden of proof remained with the defendants who pled the exception of prescription.
Thus, the threshold issue to be determined by this court is whether plaintiff's admission in the trial court proceeding acknowledging the date of diagnosis of mesothelioma constitutes a judicial confession allowing this information to be accepted by the court in the absence of formal introduction into evidence of supporting documents to establish that fact.
A judicial confession is a declaration made by a party in a judicial proceeding. It constitutes full proof against the party who made it, is indivisible, and may be revoked only on the ground of error of *429 fact. LSA-C.C. art. 1853. A judicial confession is a party's explicit admission of an adverse factual element and has the effect of waiving evidence as to the subject of the admission  of withdrawing the subject matter of the confession from issue. Cheatham v. City of New Orleans, 378 So.2d 369, 375 (La.1979); see also Sutton's Steel & Supply, Inc. v. Bellsouth Mobility, Inc., 00-0511, p. 4 (La.App. 3 Cir. 12/13/00), 776 So.2d 589, 592, writ denied, 01-0152 (La.3/16/01), 787 So.2d 316.
Review of the transcript of the hearing on the exception indicates counsel for plaintiff and counsel for six defendants entered appearances for the record. The remainder of the transcript consists of a seven-and-a-half page colloquy between the trial judge and plaintiff's counsel regarding the sequence of events leading to the filing of suit in Louisiana. At one point the court questioned counsel as follows:
THE COURT:
As I understand it, in this case Mr. Cichirillo is alleging that as a result of his exposure to asbestos-causing substances that he ... now has mesothelioma.
MS. ARDOIN:
Yes, your Honor.
THE COURT:
Then in 1992 he filed a lawsuit in Mississippi. In that lawsuit he alleged asbestosis. Then that lawsuit was pending at the time.
Now you want to suggest to me that because he filed a lawsuit in Mississippi in 1992 it interrupted prescription here? Because it is my understanding that he was diagnosed on June 29, 1999, with mesothelioma, right?[[8]]
MS. ARDOIN:
Yes, your Honor.
THE COURT:
Then in December of 2000[[9]] is when he filed this suit, which is some 19 months later. Explain it to me how we get there.
. . . .
THE COURT:
... And he was diagnosed June 29, 1999 ....
MS. ARDOIN:
Right.
Transcript of rule hearing on September 5, 2003. (Emphasis supplied.)
In arguing interruption of prescription, counsel for plaintiff did not object that the date of discovery, June 29, 1999, was not in evidence and, in fact, answered affirmatively every time the judge mentioned that date.
The colloquy concluded with the court finding Cichirillo knew of the diagnosis of mesothelioma in 1999, a finding plaintiff *430 did not challenge on appeal. Thus, the trial court found the claim filed in 2002 prescribed by law and granted the exception of prescription.
We find the response by plaintiff's counsel to the questions posed by the court regarding the date of diagnosis of mesothelioma to be a judicial confession of that fact relieving defendants of the necessity of introducing evidence. The burden then shifted to plaintiff to establish that prescription was interrupted.
Reaching the merits of this writ grant, we must determine whether Cichirillo's becoming a plaintiff in an action, Williams, et al. v. GAF Corporation, et al., filed in Mississippi in 1992 against Ingalls Shipbuilding Corporation and other "asbestos" defendants (hereafter "Ingalls defendants") interrupted prescription of his suit against the Avondale defendants in the Louisiana suit for mesothelioma filed in 2002. Plaintiff argues the listing of asbestos-related diseases in the Mississippi petition,[10] which included mesothelioma, was sufficient to interrupt prescription because there is only one cause of action for personal injury due to asbestos exposure at Avondale and Ingalls, with all named defendants being solidary obligors. However, it is undisputed that Cichirillo was not diagnosed with mesothelioma until 1999. Thus, he was not among the class action plaintiffs who were suing for mesothelioma in 1992, and the only cause of action he could assert at that time in the Mississippi suit was for some other asbestos-related condition or disease.
Liberative prescription is a mode of barring actions as a result of inaction for a period of time. LSA-C.C. art. 3447. The fundamental purpose of prescription statutes is to afford a defendant economic and psychological security if no claim is made timely and to protect the defendant from stale claims and from the loss or non-preservation of relevant proof. Giroir v. South Louisiana Medical Center, 475 So.2d 1040 (La.1985); Stroud v. Morrison Nursery, 04-1610, p. 3 (La.App. 3 Cir. 4/6/05), 899 So.2d 840, 843; Craig v. Bantek West, Inc., 03-2757, p. 10 (La.App. 1 Cir. 9/17/04), 885 So.2d 1234, 1240, writ denied, 04-2995 (La.3/18/05), 896 So.2d 1004.
Delictual actions are subject to a liberative prescriptive period of one year which commences to run from the day injury or damage is sustained. LSA-C.C. art. 3492. Prescription is interrupted by the filing of suit in a court of competent jurisdiction and venue. LSA-C.C. art. 3462. The interruption of prescription against one solidary obligor is effective against all solidary obligors. LSA-C.C. arts. 1799 and 3503. An interruption of prescription resulting from the filing of suit continues as long as the suit is pending. LSA-C.C. art. 3463. The effect of interruption of prescription, as contrasted with suspension[11] of prescription, is that the time that has run prior to the interruption is not counted; prescription commences to run anew from the last day of the interruption. LSA-C.C. art. 3466.
*431 Cognizant of these basic principles, we conclude that, as a matter of law, prescription cannot be interrupted by filing suit in Mississippi prior to the discovery of mesothelioma because such a suit would be premature. A premature suit does not suffice as an interruption of prescription pursuant to LSA-C.C. art. 3462, for the following reasons.
The general prescription articles in Louisiana simply do not contemplate interruption of prescription by the filing in a court of competent jurisdiction and venue a lawsuit that is premature because it is filed prior to the plaintiff's tort claim becoming actionable. The effect of interruption, as stated in LSA-C.C. art. 3466, is that "the time that has run is not counted." Thus, Article 3466 implies interruption occurs only after some portion of the prescriptive period has run. Further, interruption by acknowledgment prior to the claim becoming actionable is not allowed because LSA-C.C. art. 3464 states interruption occurs when the obligor acknowledges the "right of the person against whom he had commenced to prescribe." (Emphasis supplied.) Although LSA-C.C. art. 3462 is silent as to when a lawsuit must be filed in order to interrupt prescription, it would be illogical to expand that article's provision to allow interruption of prescription by a lawsuit filed prior to the time the plaintiff's claim has become actionable.
There is no evidence in the instant record that the Mississippi suit was amended to allege damages for mesothelioma after Cichirillo's diagnosis in 1999. Therefore, we must analyze the Mississippi suit as originally filed in 1992 in order to determine its efficacy for stating a cause of action for mesothelioma.
Contending Cichirillo's 1992 Mississippi suit for asbestosis interrupted the running of prescription for his 2002 Louisiana suit for mesothelioma, plaintiff relies on several older Mississippi cases that did not involve latent diseases. Further, those cases were decided prior to the 1990 amendment to Miss.Code Ann. § 15-1-49 (1990) in which the legislature enacted the "discovery rule" for latent disease cases, as follows: "In actions for which no other period of limitation is prescribed and which involve latent injury or disease, the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury."
Prior to the effective date of the above quoted statutory amendment providing a specific rule for latent disease cases, the Mississippi Supreme Court had applied a "discovery rule" in such a case. In Schiro v. American Tobacco Company, 611 So.2d 962 (Miss.1992), a long-term smoker sued cigarette companies seeking damages for lung cancer. The defendant companies argued the claim was time-barred because plaintiff had previously suffered non-malignant problems, such as emphysema and heart disease which were attributable to cigarette smoking. The court held the statute of limitations on plaintiff's cancer claim did not begin to run until lung cancer was diagnosed, regardless of plaintiff's other health problems related to cigarette smoking. The court's ruling was based on the conclusion that any suit for cancer brought before Schiro's diagnosis would have been premature. Id. at 965. The court stated:
If Schiro had brought suit on March 18, 1977, or within six years of that time after she quit smoking as defendants/appellees submit she should have, Schiro would have been asking for a remedy without a wrong. Her belief that she might have cancer sometime later is also an insufficient trigger. A belief is nothing more than an opinion or a person's view of something unsubstantiated by *432 proof. Medical diagnosis did not confirm the fact of cancer at that time. The contention that Schiro should have brought suit on December 27, or 29, 1981, or within six years of those dates after discovery of the [malignant] mass also fails. It could be argued that at this point, Schiro was aware and, in fact, knew that she had sustained an injury. However, as aforementioned, Schiro did not actually know that she had cancer, an injury connected with smoking. Thus, even if she brought suit at this point, the claim would have been premature.

Id. at 965 (emphasis supplied). This conclusion regarding prematurity is in accord with an earlier Mississippi case, Owens-Illinois, Inc. v. Edwards, 573 So.2d 704 (Miss.1990), which is, interestingly, cited by Cichirillo as supporting the argument that his cause of action accrued with his diagnosis of asbestosis. Cichirillo's reliance on Owens-Illinois is misplaced because the court specifically stated that a "cause of action accrues only when it comes into existence as an enforceable claim; that is, when the right to sue becomes vested." Id. at 706, quoting Estate of Kidd v. Kidd, 435 So.2d 632, 635 (Miss. 1983).[12]
Additionally, in Cannon v. Mid-South X-Ray Company, 738 So.2d 274 (Miss. App.1999), the plaintiff experienced illness in 1975 from exposure to toxic chemicals she encountered as an x-ray technician. Although her symptoms manifested within six months of her employment and she sought immediate medical attention, it was not until 1993 that her condition was diagnosed by a physician and related to the chemical exposure. Applying Mississippi's discovery-rule statute and following Schiro, the appellate court held the plaintiff's cause of action was not time barred because it accrued on the date the illnesses were diagnosed by a doctor. Id.
Application of the discovery rule, as provided in Miss.Code Ann. § 15-1-49(2) and as interpreted by the Mississippi courts, convinces us that under Mississippi law, one's cause of action for cancer in a latent disease case does not accrue until that disease has been diagnosed by a physician. According to the Mississippi Supreme Court in Schiro, it would have been premature for Cichirillo to seek damages for contracting mesothelioma before that condition actually manifested and had been diagnosed by a physician.
Cichirillo did not have a cause of action for mesothelioma in Mississippi until that disease was diagnosed in 1999. Consequently, the filing of his prior Mississippi suit could not serve to interrupt the Louisiana prescriptive period. The fact that Cichirillo could not bring suit in Mississippi for mesothelioma until that disease was diagnosed makes the instant case distinguishable from our holding in Taylor v. Liberty Mutual Insurance Company, 579 So.2d 443 (La.1991), the case relied upon by the court of appeal. Taylor's suit in Arkansas was not premature in that state, a fact which allowed interruption of prescription pursuant to the Louisiana law regarding solitary obligors.

CONCLUSION
Under Mississippi law, plaintiff's claim for damages arising out of mesothelioma did not become actionable until he was *433 diagnosed with mesothelioma in May of 1999. Because the 1992 Mississippi lawsuit for asbestosis damages was filed prior to the diagnosis of mesothelioma, at a time when Cichirillo could not have asserted a claim for mesothelioma in Mississippi, the Mississippi suit could not serve to interrupt prescription in Louisiana in the present suit.
Our analysis of Louisiana's statutory provisions regarding prescription leads us to the conclusion that plaintiff's suit against the Avondale defendants, filed more than three years subsequent to the diagnosis of mesothelioma, is prescribed. See LSA-C.C. art. 3492. We conclude, as a matter of law, that a prior suit in Mississippi could not interrupt prescription because the filing preceded the date plaintiff's claim became actionable. Because the Mississippi suit was premature as to the mesothelioma claim, it could not serve to interrupt prescription in Louisiana.

DECREE
For the foregoing reasons, we reverse the judgment of the court of appeal and affirm the judgment of the trial court granting the exception of prescription in favor of defendants, Peter Territo and Northrop Grumman Ship Systems, Inc., formerly known as Avondale Industries, Inc.
REVERSED.
JOHNSON and VICTORY, JJ., concur.
NOTES
[1] Although Avondale Industries, Inc. was named as a defendant in this suit, the proper party name is Northrop Grumman Ship Systems, Inc., successor in interest to Avondale Industries, Inc.
[2] The only issue before this court concerns Cichirillo's cause of action as it existed at the time of the trial court ruling. Cichirillo has since died and the trial court signed an order allowing the wrongful death beneficiaries to file a supplemental and amending petition substituting the heirs in the survival action and supplemental pleadings asserting the heirs' action for wrongful death. We are not called upon to address the subsequent amendments to the petition and express no opinion as to the status of the wrongful death action.
[3] Mesothelioma is defined as "[a] malignant tumour of the pleura, the membrane lining the chest cavity." BLACK'S MEDICAL DICTIONARY 399 (40th ed.2004).
[4] LSA-C.C. art. 3462 provides, in pertinent part:

Prescription is interrupted when ... the obligee commences action against the obligor, in a court of competent jurisdiction and venue.
[5] LSA-C.C. art. 1799 provides:

The interruption of prescription against one solidary obligor is effective against all solidary obligors and their heirs.
Additionally, LSA-C.C. art. 3503 provides, in pertinent part:
When prescription is interrupted against a solidary obligor, the interruption is effective against all solidary obligors and their successors.
[6] In Taylor, this court overruled the lower courts' rulings maintaining an exception of prescription and held that a timely filed damage suit against a tortfeasor in an Arkansas federal court operated to interrupt prescription against a solidarily bound uninsured motorist carrier in Louisiana even though the Arkansas suit was not timely filed under Louisiana law. Thus, a suit timely filed in a foreign jurisdiction under the laws of that forum was sufficient to interrupt prescription as to a defendant who was solidarily liable with the defendants sued in Arkansas.

This court also indicated that absent clear legislative intent, prescriptive statutes which can be given more than one reasonable interpretation should be construed to maintain rather than bar the action. Taylor, 579 So.2d at 446.
[7] The failure to appropriately file exhibits into evidence is problematic. Some confusion apparently arises due to the differences in a court's consideration of motions for summary judgment and peremptory exceptions. In considering a motion for summary judgment, the court shall render judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." LSA-C.C.P. art. 966. Appellate review of motions for summary judgment is de novo. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La. 1992). Thus, the appellate court considers the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits submitted by the parties.

On the other hand, at the trial of a peremptory exception of prescription, "evidence may be introduced to support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition." LSA-C.C.P. art. 931. Appellate review of the record following a hearing on exceptions is governed by manifest error when evidence has been introduced at the hearing. Carter v. Haygood, 04-0646, p. 9 (La.1/19/05), 892 So.2d 1261, 1267; Perez v. Trahant, 2000-2372 (La.App. 1 Cir.12/28/01), 806 So.2d 110, writs denied, 02-0847, 02-0901 (La.8/30/02), 823 So.2d 953. In the absence of evidence, the exception of prescription must be decided on the facts alleged in the petition, which are accepted as true. Waguespack v. Judge, 04-0137 (La.App. 5 Cir. 6/29/04), 877 So.2d 1090.
Failure to adequately prepare the record by neglecting to offer matters into evidence can alter the outcome of a case, especially in an exception of prescription where the burden of proof may shift between the parties. In this matter, that failure led to delay and additional work on the part of this court and counsel for the parties which could have been avoided by introducing evidence into the record.
[8] Attached as an exhibit to the exception of prescription filed by Territo is a "To Whom It May Concern" letter dated June 29, 1999, prepared by Donna A. Walker, M.D., Department of Oncology/Hematology, indicating Cichirillo was diagnosed with "malignant mesothelioma in May 1999." This letter, which was not in evidence, nevertheless corroborates the admission by plaintiff's counsel that the disease was diagnosed in 1999. For the purpose of our analysis, whether the diagnosis occurred in May, as the letter indicates, or June as stated in the colloquy, is irrelevant.
[9] Defendant's memorandum on the exception of prescription incorrectly stated plaintiff's lawsuit was filed on December 4, 2000. Counsel for Territo acknowledged in open court the initial brief contained a typographical error. Counsel advised the court and the record indicates the petition was actually filed December 4, 2002, more than three years following plaintiff's diagnosis of mesothelioma.

A review of the record confirms the petition was filed on December 4, 2002.
[10] Paragraph 10 of the petition includes the following: asbestosis, pulmonary or bronchogenic carcinoma, mesothelioma, impaired pulmonary capacity, reduced lung volume, pleural plaques, interstitial lung fibrosis, cardiac and circulatory disease, increased susceptibility to one of the foregoing diseases and other illnesses, physical and mental anguish associated with one or more of the preceding conditions, and death.
[11] The period of suspension is not counted toward accrual of prescription; prescription commences to run again upon the termination of the period of suspension. See LSA-C.C. art. 3472. Stated simply, the period of suspension prolongs the prescriptive period.
[12] Further remarks from Kidd, as quoted in Owens-Illinois, support our conclusion that a suit for mesothelioma damages in Mississippi in 1992 would have been ineffective because the suit would have been subject to dismissal as premature. The Mississippi court stated: "`A cause of action must exist and be complete before an action can be commenced, and, when a suit is begun before the cause of action accrues, it will generally be dismissed if proper objection is made.'" Id. Additionally, the Owens-Illinois court quoted Smith v. Temco, Inc., 252 So.2d 212, 216 (Miss.1971), which stated that the "tort is not complete until the injury occurs." Id. at 707.